IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.  05-cv-00132-RPM

BARBARA NEIL,
TOM WULF, and
LESLIE BERRY,

       Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, COLORADO, a Municipal Corporation;
DENNIS GALLAGHER, Auditor; and
DAWN SULLEY, Deputy Auditor,

       Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

The City and County of Denver ("City") was created by Article XX of the Constitution of Colorado as a home rule city with self-governing authority over local and municipal matters.  Its officers are selected by appointment or election as provided by a charter adopted and amended by the popular vote of its citizens.  Under the current Charter, a Mayor and an Auditor are elected by the voters in a non-partisan election.  Charter, Arts. II and V.

Most City employees are hired, promoted, disciplined and fired in accordance with a Career Service personnel system established under Article IX, Part 1, §9.1.1 of the Charter.  That system is directed by a Career Service Board consisting of members appointed by the Mayor and confirmed by the City Council.  Specific powers and duties of the Career Service Board are set forth in the Revised Municipal Code of the City and County of Denver ("Denver Municipal

Code"), including the Board's authority over the Career Service Authority created under that code. Denver Municipal Code, Chap. 18, Art. I, Sec.18-1.

The Career Service Authority is the central human resources agency for the City's employees in the Career Service personnel system. The Career Service Authority, Career Service Board and Career Service personnel director are responsible for maintaining and fostering a merit-based personnel system and "shall be committed to equal employment opportunity." Denver Municipal Code, Chap. 18, Art. I, Sec. 18-1.

The Denver Career Service Board Personnel Rules ("Rules"), adopted by the Career Service Board, provide protection to Career Service employees, including, among other things, specific terms and conditions for the separation of employees from the Career Service, procedures preceding layoffs, protection from discrimination or harassment because of political affiliation, and procedures for reporting, investigating and remedying violations. Career Service Personnel Rules 14, 15 & 19. An employee claiming a violation of those protections may seek an evidentiary hearing before a Career Service hearing officer, and an appeal to the Career Service Board whose decision is subject to limited judicial review under C.R.C.P. 106. Thus, Career Service employment is a protected property interest.

The Charter gives the Mayor and the Auditor authority to appoint a limited number of employees to positions specifically designated by them as exclusions from Career Service. Specifically, the Auditor may employ certified public accountants "and up to five employees appointed to serve at the pleasure of the Auditor in positions specifically designated or created by the Auditor in the Auditor's Office." Art. IX, Part 1, § 9.1.1E(viii).

Don Mares ("Mares") was the City Auditor from 1995 until 2003. He unsuccessfully

sought election as Mayor in 2003. Dennis Gallagher ("Gallagher") was elected Auditor in that election.

When Gallagher took office as Auditor in 2003, he appointed Dawn Sulley ("Sulley") as Deputy Auditor; R. D. Sewald ("Sewald") to serve as liaison to City Council; Breck Grover to be in charge of contracts, and Dennis Berckefeldt to be in charge of communications and prevailing wage. These appointments were exempt from Career Service. Gallagher appointed Lisa Ferreira ("Ferreira") as a part-time special assistant to do research and special projects, another exempt position. When Ferreira left for full-time employment elsewhere in April, 2004, the Auditor appointed Sharon Bailey ("Bailey") as the fifth at-will employee.

In the fall of 2003, Gallagher asked CSA about his authority to reorganize the Auditor's office to enable him to give managerial authority to his appointees. Upon receiving assurance that a reorganization for that purpose was permitted, he assigned Sulley and Sewald to meet with CSA employees to assure compliance with applicable rules governing layoff and demotion of protected employees in positions that would be affected by the plan of reorganization.

The plaintiffs in this case were among those affected. Barbara Neil ("Neil") became an employee of the Auditor's office in 1969. She served Auditors Burns, Dee, Licht, Webb and Crider before Mares. Mares had assigned her to supervise the Administration and Human Resources division for the office. Tom Wulf ("Wulf") was an employee serving Auditors Crider and Webb before Mares, who designated him as Director of Accounting. Mares had appointed Leslie Berry ("Berry") to the exempt position of Deputy Auditor in 1996. In October, 1999, Berry moved into a Career Service position as the Director of Information Systems.

Gallagher's reorganization was reflective of a managerial philosophy different from that of

3

Mares. Office practices changed. Gallagher discontinued individual meetings with division directors, including plaintiffs, and adopted the practice of group meetings with all directors. He stopped monthly staff meetings to acknowledge birthdays in favor of quarterly meetings. The plaintiffs perceived these changes as implied criticism of Mares.

Gallagher finalized his reorganization plan in May and, by letter dated June 10, 2004, he gave thirty days' notice to the plaintiffs that their positions were being eliminated in July.

Under the reorganization plan, Gallagher eliminated the technology section. That conformed to the City policy to have a single information technology department under the Mayor's Chief Information Officer. Berry transferred to a career service position at Denver International Airport with no gap in employment. Bailey was assigned to supervise accounting and Sulley assumed responsibility over administration and human resources, in addition to their existing duties, absorbing the work previously done by Wulf and Neil, respectively.

Neil was offered a demotion into another position in the Auditor's office which she declined. Wulf was also offered a demotion into another position in the Auditor's department which he declined. Neil and Wulf filed appeals under the Career Service Personnel Rules but withdrew their appeals before hearing. Berry never filed an appeal.

In this civil action for relief under 42 U.S.C. § 1983, the plaintiffs claim that Sulley, Gallagher and the City violated the First and Fourteenth Amendments of the United States Constitution by forcing them out of the Auditor's office because of their association with Mares and their non-alignment with a faction of the Democratic Party. They rely on *Elrod v. Burns,* 427 U.S. 347 (1976) and *Rutan v. Republican Party of Illinois,* 497 U.S. 62 (1990) as primary authority. In the opinions deciding those cases, the authors condemned the use of partisan

political patronage in the retention and selection of public employees as burdens on free speech and association within the scope of the First Amendment's protection. Those cases arose within the context of the two-party system. There has been some difficulty in determining the reach of what the Court acknowledged as a recognized need for elected public officials to implement policy through subordinates who have political loyalty. In *Riley v. Blagojevich,* 425 F.3d 357 (7th Cir. 2005), Judge Posner demonstrated that difficulty in his summary of opinions in the Seventh Circuit Court of Appeals.

This case does not present the question of whether the positions held by the plaintiffs under Mares put them in such a policy role. They were Career Service employees.

The analysis appropriate to the plaintiffs' claims is that followed by the Tenth Circuit Court of Appeals in *Mason v. Oklahoma Turnpike Authority,* 115 F.3d 1442 (10th Cir. 1997) and the controlling question is whether the plaintiffs have made a sufficient showing that their positions were abolished and their employment terminated based on their political beliefs, affiliation or non-affiliation to survive dismissal under Fed.R.Civ.P. 56. More specifically is there enough evidence to support a finding that political discrimination or retaliation was a motivating factor in the elimination of their positions?

There has been full discovery in this case and the parties have submitted proffers of proof in a support of and opposition to the defendants' motion for summary judgment. The defendants moved to strike the affidavits of Don Mares, Michael Beasley and Lisa Ferriera as well as Exhibits 19, 25 and 57. While these papers do include material which would not be admissible evidence at trial, the motion to strike is denied upon the assumption that some of the same information could be presented at trial under the Federal Rules of Evidence and because unlawful motivation in

employment decisions is provable by circumstantial evidence, the plaintiffs should be indulged in their attempt to show a triable case. Even with that indulgence and accepting the credibility of what has been presented by the plaintiffs, they have failed to demonstrate that a reasonable jury could find for them.

At best, the plaintiffs have suggested that within the Democratic Party in North Denver, there has long been a significant struggle for political power between groups they identify as the "Gallagher/Sulley faction" and the "Schley/Mares faction" with animosity and distrust between them resulting from more than "twenty years in a long series of hotly contested and acrimonious primary races for various political offices, in an effort to gain the upper hand in political influence and control." Plaintiffs' Response, p. 2. What they have not shown is that any of them had any involvement in that ongoing struggle for power and influence. They have not demonstrated how the realignment of responsibilities in the Auditor's office advanced the power and influence of the Gallagher/Sulley faction in the Democratic Party.

Neil is a Republican. She says she was a "vocal supporter" of Mares during the eight years he served as Auditor. She was "aligned" with him because she contributed to his campaign, vocally supported him, and "had a friendship with him." Neil knows nothing about Mares' politics other than he is a Democrat.

Wulf was not politically active in Denver politics. He believed that Gallagher did not like any of the staff members and wanted to get rid of "anybody that is not a supporter." Wulf supported Mares' mayoral campaign with contributions and working for his election. Wulf believes that Gallagher wanted to get rid of him not because of Wulf's campaign activities but because "it was very well known that I was very supportive of Don in the general . . . I spent a

lot of time at City Council and had made presentations over there. . . . I think it is more from that perspective that he would have felt threatened by my association with Don Mares." His "open support" of Don Mares consisted of supporting Mares if someone would claim he had done things improperly. Wulf's "political beliefs" that he had that were at odds with Gallagher's were that "Auditor Mares had integrity and was honest," and made decisions in "the best interest of the City."

Berry did volunteer work for Mares' campaign for Mayor and unopposed re-election campaign for Auditor. While employed by Gallagher, Berry's speech and activities that were supportive of Mares consisted of speaking about things that had been done by Mares and defending them, on subjects such as policies, procedures, the mission statement, and general practices.

Although the evidence shows the plaintiffs provided support for Mares' political campaigns in varying degrees, the evidence does not support the conclusion that it was the plaintiffs' *political* support of or affiliation with Mares which resulted in their lay offs. The plaintiffs' alignment with or advocacy for Mares was with the manner and method in which he ran the Auditor's office, and not his politics. That type of association is not within the protection of the First Amendment.

The plaintiffs' suggested inference of discriminatory or retaliatory discrimination against them because of their alignment with Mares is rebutted by the fact that Mike Clark, Director of Internal Audit under Mares, retained that position under Gallagher even though Clark contributed to Mares' campaign for Mayor. Even more persuasively, two of Gallagher's exempt appointees, R. D. Seward and Dennis Berckefeldt, openly supported the Mares for Mayor campaign.

Berckefeldt had also supported Mares in his earlier campaign for Auditor.

The defendants have shown that Gallagher obtained prior approval by the Career Service Authority for a reorganization. The stated purposes included budgetary considerations and the opportunity for the Auditor to have more control over the operations of his office by giving his appointees the supervisory and managerial authority the plaintiffs had in their positions. The plaintiffs have challenged the qualifications of those appointees for performing the responsibilities assigned to them. The adequacy of their work is a matter for Gallagher to decide and the performance of their duties is within his responsibility for the conduct of the Auditor's office for which he is accountable to the electorate.

Upon the foregoing, it is

ORDERED that the defendants' motion for summary judgment is granted and the Clerk will enter judgment for the defendants dismissing this civil action and awarding costs.

DATED: February 20th, 2007

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge